RECEIVED
MAR 24 2004

THE LIBRARY OF CONGRESS
101 INDEPENDENCE AVENUE, S.E.
WASHINGTON, D.C. 20540–9410

CONTRACTS AND GRANTS MANAGEMENT SERVICES

March 19, 2004

CERTIFIED MAIL-RETURN RECEIPT

Mr. Gary T. Carr
Attorney At Law
Post Office Box 3030
St. Louis, Missouri 63130

Re: Contracting Office Final Decision 04-001 regarding
Recall of the C-2 Machines under LC Contract H 70015.

Dear Mr. Carr:

This letter is the Contracting Officer's Final Decision and responds to your correspondence dated. August 29, 2003, regarding the recall of the C-2 machines. The Library does not believe that the units can be repaired and made safe for its blind and physically handicapped patrons. Therefore, the Library seeks financial restitution in the amount of $1,807,993 (see attachment 1).

Following complaints from users, the Library contracted with two independence laboratories, Seal Corporation and Met Labs to test the C-2 for potential hazards. Both concluded that the C-2 machines pose a safety hazard to their intended users – the blind and physically handicapped. In your letter, you contest the Library's independent test of the C-2 machines and the conclusions of the independent laboratories. As you know, the Seal report makes four recommendations that would somewhat mitigate the inherent hazard of the C-2. These are:

1. Fuse the input power source;
2. Move the transformer to another location;
3. Increase available air circulation; and
4. Equip the units with a polarized plug.

LaBarge has offered to implement recommendations 1 and 4, but rejects recommendations 2 and 3 as impossible.

This offer is not acceptable. It does not fully implement the independent laboratory's recommendations, and therefore would not mitigate the safety hazard.

PLAINTIFF'S EXHIBIT
3

In addition to the independent laboratories' tests, the Library directed its own Engineering Section to perform testing that would approximate real life operating conditions for the C-2 machines in their intended environment. LaBarge contends that the National Library Service for the Blind and Physically Handicapped (NLS-BPH) engineering test using manual override of the machine and pillows was unreasonable and constituted gross misuse of the machine. We disagree. NLS-BPH provides a reading service to its patrons. Like sighted people, blind and physically handicapped people enjoy listening to their book in bed where pillows and other soft flammable materials are present. Therefore, the machine's design and construction must take into account conditions that might create hazards. To say that LaBarge was not aware of this is incorrect. LaBarge was fully informed of the nature of the intended client and environment early in the manufacturing cycle. In addition, LaBarge also had full knowledge that NLS-BPH has a special adaptive device called a "pillow speaker" for which the C-2 was designed. The LaBarge argument that the unit could not possibly burn through the case material or catch fire is also incorrect. The engineering report from SEAL Corporation states that: "the increased current flow through the short ... **could lead to an ultimate failure of the transformer, case melting and possible ignition"** (emphasis added). NLS-BPH has in its possession two units retrieved from patrons. These units have holes burned completely through the bottom of the case. LaBarge argues that the plastic will not catch fire, but if a hole develops in the plastic, flammable material on which the unit is resting could catch fire. The argument about the plastic casing not catching fire, but only thinning, does not address the possibility of the unit being responsible for igniting other flammable material. The risk of flammable materials igniting after exposure to hot internal electronic parts is unacceptable. This is particularly true given the nature of the intended users: blind and physically handicapped individuals, who will experience greater difficulty in escaping a fire.

Both independent testing laboratories state that a hole in the case creates a potential shock hazard. A finger or other body part coming into contact with the electronics inside the unit could be exposed to electric current. This is significant because the sense of touch becomes all-important to our blind users when trying to determine if something is not working right. If the machine is plugged in, this could become a real danger for an unsuspecting patron handling the machine.

The Library rejects LaBarge's argument that the tested machines may have outlived their useful lives. LaBarge argues that the age of the C-2 machines analyzed by MET Laboratories is unknown, and that they could be 6-year-old units, which should have been retired. In fact, the units are four and five years old according to NLS-BPH records (S/N 03864 10/95; S/N 11314 07/96).

LaBarge states that they were forced to use a previous contractor's design. In fact, LaBarge was presented with an initial design to which it made numerous changes over a five-year period. LaBarge had the opportunity, over this time period, to modify the design in any way in order to formulate one meeting the machine's intended use. The Library is not concerned with the machine's design – only its performance. The Library contracted with LaBarge to produce a machine meeting certain performance specifications and which was

free of safety hazards. LaBarge was free to modify the design in any way so as to meet these requirements.

Finally, the Library rejects LaBarge's claim for $22,000 in storage costs for 300 machines over a four-year period in a relatively inexpensive rural storage environment. The Library has incurred approximately $8,000 in costs to store 7,000 machines over roughly a four-year period, in a high cost urban storage environment (the Multistate Center West in Salt Lake City, Utah). LaBarge's claim is unreasonable by comparison.

In conclusion, the Library of Congress rejects LaBarge's C-2 settlement offer of a retrofit of the C-2 machine with new parts and seeks restitution. NLS-BPH had two independent laboratories examine the failed C-2 units, and both concluded that the C-2 machines submitted by LaBarge constitute a safety hazard to the handicapped patrons using them. In addition, tests conducted by our Engineering Section demonstrate that it is possible for the C-2 to experience a failure in a patron's bedroom while reading. Accordingly, the Library issued a recall for the units in question. As a result of this decision, any remedy that includes redeploying the C-2 machine into the NLS-BPH patron network is unacceptable.

This is the final decision of the Contracting Officer. We expect you to provide reimbursement to the Library in the amount of $1,807,993 within 30 days of receipt of this letter. You may appeal this decision to the agency's board of contract appeals by contacting the Library's Chief of Contracts, Mr. William Barker, 101 Independence Ave., LA 325, Washington D.C. 20540. If you decide to appeal, you must, within 90 days of the date you receive this decision, mail or otherwise furnish written notice to the agency board of contract appeals and provide a copy to the Contracting Officer from whose decision this appeal is taken. The notice shall indicate that an appeal is intended, reference this decision, and identify the contract by number.

Instead of appealing to the agency board of contract appeals, you may bring an action directly in the United States Court of Federal Claims within 12 months of the date you receive this decision.

In the meantime, should you have any questions, contact me at (202) 707- 0412.

Sincerely,

Napoleon Jasper
Contracting Officer

Attachment 1 - LaBarge - H70015

Computation of Recall Costs for C-2 Machines

| | | |
|---|---|---|
| Original Contract Amount | | 2,657,754 |
| Spare Parts | | 42,188 |
| Yen Fluctuation (contract amount adjustment) | | 112,733 |
| Contract Value | | 2,812,675 |
| Less: Value Used | | |
| Months Used | 56 | |
| Life of Machines | 144 | 38.9% |
| Contract Value Used | | 1,093,818 |
| Contract Value Remaining | | 1,718,857 |
| Return postage | | 65,620 |
| Storage of machines | | 8,066 |
| Testing | | 11,600 |
| Contractor processing staff time | | 3,700 |
| Pallet expense | | 150 |
| Associate costs | | 89,136 |
| Total | | 1,807,993 |