# United States Court of Federal Claims

| | | |
|---|---|---|
| **LaBarge, Inc.,** **Plaintiff,** | ) | |
| **v.** | ) | **No. 05-1C** |
| **The United States,** | ) | **Senior Judge Smith** |
| **Defendant.** | ) | |

## REPLY

**Comes now** plaintiff LaBarge, Inc. and for its reply to the numbered paragraphs of defendant's Counterclaim states as follows:

33. LaBarge admits that the Court has jurisdiction of this cause. LaBarge denies that the Wunderlich Act, 41 U.S.C. §321, is pertinent to the cause and affirmatively alleges that it is entitled to a trial *de novo* of all issues arising herein.

34. LaBarge admits the allegations of paragraph 34.

35. LaBarge admits the allegations of paragraph 35.

36. LaBarge admits the allegations of paragraph 36, except that LaBarge denies that its contract obligations were other than to design certain modifications to a prior "talking book" machine known as the C-1.

37. LaBarge admits the allegations of paragraph 37, except that LaBarge denies that defendant's specifications are "integral performance" specifications.

38. LaBarge admits the allegations of paragraph 38.

39. LaBarge admits the allegations of paragraph 39.

40. LaBarge admits the allegations of paragraph 40.

41. LaBarge admits the allegations of paragraph 41.

42. LaBarge admits the allegations of paragraph 42, except that to the extent that defendant's allegation that the holes in the bottom of the case were "burned" implies combustion, LaBarge denies any such allegation.

43. LaBarge admits that defendant submitted C-2 machines to Seal and Met Labs for testing and that written reports by these two companies were provided to LaBarge. The reports speak for themselves and are the best evidence of their content. Otherwise, LaBarge denies the allegations of paragraph 43.

44. LaBarge admits that the Seal and Met Labs reports stated recommendations and conclusions, however, the reports speak for themselves and are the best evidence of their content. LaBarge also admits that it responded to the recommendations and conclusions stated in the reports, however, LaBarge affirmatively alleges that any remediation offer made in response constitutes an inadmissible offer of compromise. Otherwise, LaBarge denies the allegations of paragraph 44.

45. LaBarge admits that defendant has previously stated a description of the testing alleged in paragraph 45, however, LaBarge is without knowledge or information sufficient to form a believe as to the truth of the allegations of the first two sentences of paragraph 45 and therefore denies them. LaBarge admits that intended C-2 users may in fact use the machines while in bed or upon furniture with soft fabric, however, LaBarge denies that defendant's alleged test recreated a realistic scenario.

46. LaBarge denies the allegations of paragraph 46.

47. LaBarge admits that defendant recalled all C-2 machines and that defendant claims to have done so based upon the results of the Met Labs report. LaBarge specifically denies that defendant's recall was based upon conclusions of testing performed by its own engineers or by Seal. Otherwise, LaBarge is without knowledge or information sufficient

to form a belief as to the truth of the allegations of paragraph 47 and therefore denies them.

48. LaBarge denies the allegations of paragraph 48.

49. LaBarge denies the allegations of paragraph 49.

50. LaBarge admits the allegations of paragraph 50, except that LaBarge denies that the contracting officer's decision assessed interest.

51. LaBarge denies the allegations of paragraph 51, and further denies that defendant is entitled to any of the relief demanded in its prayer.

## AFFIRMATIVE DEFENSES

1. Having accepted delivery, defendant is precluded from complaining of patent, or non-latent, defects.

2. Defendant's counterclaim fails to state a claim upon which relief can be granted because, *inter alia*, it fails to allege any noncompliance with contract specifications.

3. The product was not defective, as a matter of law, because the defect alleged, "holes burned completely through the machines", and resulting alleged shock and fire hazards, occur only when the product is subjected to test and/or operating conditions far more stringent than the contract requires.

4. The C-2 units manufactured by LaBarge were not defective, as a matter of law, because no foreseeable risk of harm posed by the product could have been reduced significantly or avoided by the adoption by LaBarge of a reasonable alternative design that met defendant's specifications.

5. The C-2 units manufactured by LaBarge were not defective, as a matter of law, because to the extent the risk of harm alleged by defendant was real and foreseeable, it could have been, and can be, reduced or avoided by the provision by defendant of reasonable instructions or warnings.

6. The C-2 units manufactured by LaBarge were not defective, as a matter of law, because to the extent the risk of harm alleged by defendant was real and foreseeable, it was also open, obvious, and generally known.

7. The C-2 units manufactured by LaBarge were not defective, as a matter of law, because the product does not depart from its intended design, which was approved by defendant.

8. Under the contract specifications and design constraints imposed by defendant, it was impossible, or impracticable, to design and manufacture a C-2 unit that would generate heat insufficient to cause case damage under the extreme operating and test conditions alleged by defendant as the basis for its claim.

9. The contract specifications, in conjunction with defendant's exercise of control of the design of the C-2 product and implementation thereof, required that LaBarge be held to the standards appropriate to design specifications. If the C-2 design is in fact defective, then defendant is in breach of its implied design specification warranty and is barred from complaining of the defect(s) alleged.

10. Defendant was aware prior to approving the commencement of manufacture that the C-2's power consumption, as mandated by the specifications, would result in excessive temperatures within the unit unless heat dissipation measures were accomplished. Defendant knew, or should have known, prior to acceptance, therefore, that if heat dissipation were prevented, the C-2 machine would fail. If the C-2 units are in fact defective as a result of inability to dissipate heat, defendant knew, or should have known, of the defect, which therefore was not latent.

11. Defendant was aware prior to approving the commencement of manufacture that the C-2's power consumption, as mandated by the specifications, would result in excessive temperatures within the unit unless heat dissipation measures were accomplished. Defendant knew, or should have known, prior to acceptance, therefore, that if heat dissipation were prevented, the C-2 machine would fail. Nothwithstanding its knowledge, defendant approved the design for manufacture, and thereby waived any right to complain of a latent defect.

12. Defendant was aware prior to approving the commencement of manufacture that the C-2's power consumption, as mandated by the specifications, would result in excessive temperatures within the unit unless heat dissipation measures were accomplished. Defendant knew prior to acceptance, therefore, that if heat dissipation were prevented, the C-2 machine would fail. Nothwithstanding its knowledge, defendant approved the design for manufacture. As a result, LaBarge changed its position in reliance thereon by commencing and completing manufacture. Defendant accepted delivery of and used the products delivered for several years. Defendant is estopped to complain of any alleged latent defect related to insufficient heat dissipation capacity.

13. Defendant's counterclaim fails to state a claim upon which relief can be granted because, *inter alia*, it fails to allege that the defect complained of was not caused by events occurring after acceptance.

14. Defendant's counterclaim fails to state a claim upon which relief can be granted because, *inter alia*, it fails to allege:

(a) that defendant employed acceptance inspections and tests;

(b) that any such inspections and/or tests were reasonable;

(c) why the tests and/or inspections employed failed to reveal the alleged defect; or

(d) that the post-acceptance tests were (i) reasonable and contract compliant, or, (ii) if they were, why such tests were not employed prior to acceptance.

15. Defendant failed to give timely notice to LaBarge and/or to act within a reasonable time to revoke its acceptance for latent defect. It is therefore barred.

16. Defendant is barred by laches.

17. Defendant failed to afford LaBarge a reasonable opportunity to cure. Defendant is therefore barred.

18. Apart from its application of unreasonable post-acceptance laboratory test conditions to create a product failure, defendant can show no causal connection between the design of the C-2 unit and the defects in the two units cited that failed in the field.

19. Defendant's counterclaim fails to state a claim upon which relief can be granted because, *inter alia*, it fails to allege that the defects in the two units cited that failed in the field were not caused by post-acceptance events, including but not limited to customer abuse and/or use in conditions more severe than anticipated by the terms of the contract.

20. Defendant's counterclaim is time barred by the one- and six-year provisions of the applicable statute of limitations.

21. C-2 units shipped by LaBarge are presently 9 - 13 years old. They were used by defendant's patrons for many years. Since their recall in 2000, all units have been warehoused and have physically depreciated while in storage. Most if not all units had reached the end of their reasonable life expectancy at the time of recall. All units are now obsolete as defendant has recently entered a contract for the design and production of digital playback devices. Defendant can prove no damages.

WHEREFORE, having fully replied, LaBarge prays for the dismissal of the counterclaim and for its costs.

/s/ Gary T. Carr
Gary T. Carr
Post Office Box 300129
6253 Westminster Pl.
St. Louis, MO 63130
(314) 725-6464
Fax: 725-6868

Attorney of Record for Plaintiff

Of Counsel

Stephen S. Kaye
Bryan Cave LLP
700 Thirteenth Street N.W.
Washington, D.C. 2005-3960
(202) 508-6000
Fax: (202) 508-6200

Date: May 6, 2005

**CERTIFICATE OF FILING**

I certify that on the 6th day of May, 2005, a copy of the foregoing was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access the filing through the Court's system.

/s/ Gary T. Carr